UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RIVERKEEPER, INC.,
      Plaintiff,

v.

ROYAL COACH LINES, LLC and ROYAL COACH LINES, INC.,
      Defendants.

Case No. 7:24-cv-1234-PMH

~~(PROPOSED)~~
CONSENT DECREE

---

    WHEREAS, Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization organized under the laws of the state of New York, with its principal place of business in Ossining, New York.

    WHEREAS, Defendant Royal Coach Lines, LLC ("Defendant") is a corporation incorporated under the laws of the State of New York that has an office at 1010 Nepperhan Avenue, Yonkers, NY 10703.

    WHEREAS, Defendant Royal Coach Lines, Inc. merged with Defendant Royal Coach Lines, LLC in 2023, no longer exists as a separate corporate entity, and is hereby dismissed from this lawsuit.

    WHEREAS, to the extent relevant to this Consent Decree, Defendant Royal Coach Lines, LLC assumed the obligations, liabilities, and contracts of "Royal Coach Lines, Inc."

    WHEREAS, Defendant participates in operation of at least a portion of the following school bus vehicle and equipment maintenance and/or storage facilities (collectively referred to as the "RC Facilities"):

- 2260 Saw Mill River Road, Elmsford, NY 10523 ("Elmsford");
- 51 NY-100, Briarcliff Manor, NY 10510 ("Ossining");
- 120 Primrose Street, Lincolndale, NY 10540 ("Somers");
- 924 Broadway, Thornwood, NY 10594 ("Thornwood");
- 475 West Hartsdale Avenue, Hartsdale, NY 10530 ("Greenburgh");
- 1010 Nepperhan Avenue, Yonkers, NY 10703 ("RC Corporate");
- 870 Nepperhan Avenue, Yonkers, NY 10703 ("870 Nepperhan"); and
- 1228 Saw Mill River Road, Yonkers, NY 10710 ("1228 SMRR").

    WHEREAS, Plaintiff alleges that stormwater associated with industrial activities from the RC Facilities discharges into navigable waters of the United States, including the Saw Mill

River, the Pocantico River, the Plum Brook, and the Rum Brook, tributaries of the Hudson River.

WHEREAS, Defendant conducts industrial activities described under the primary Standard Industrial Classification ("SIC") Code of 4151 at the RC Facilities, and therefore any discharge of stormwater associated with Defendant's maintenance activities at those facilities is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("MSGP") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-23-001.

WHEREAS, Defendant has operated the RC Facilities, in some cases for many years, without coverage under the MSGP or individual Clean Water Act permits.

WHEREAS, Plaintiff sent a notice of intent to sue Defendant (the "Notice Letter") on December 21, 2023, and filed a complaint on February 20, 2024, alleging violations of the Clean Water Act ("CWA") Sections 301 and 402, 33 U.S.C. §§ 1311(a), 1342, by, *inter alia*, discharging polluted stormwater associated with industrial activity without coverage under the MSGP and failing to comply with the conditions of the MSGP, seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, Plaintiff filed an amended complaint (together with the February 20, 2024 complaint, the "Complaint") supplementing the list of RC Facilities on April 22, 2024.

WHEREAS, Plaintiff has entered and inspected the RC Facilities, and Plaintiff and Defendant (collectively, "the Parties" or individually "Party") have exchanged information regarding compliance with the Clean Water Act at the RC Facilities.

WHEREAS, Defendant submitted to DEC Notices of Intent to be covered under the MSGP for Greenburgh, Elmsford, Ossining, Somers, and Thornwood on May 30–31, 2024, and such coverage was acknowledged by DEC on July 10, 2024 for Ossining and on August 12, 2024 for Greenburgh, Elmsford, Somers, and Thornwood.

WHEREAS, the Parties have assessed 1010 Nepperhan, 870 Nepperhan and 1228 SMRR and agree that coverage under the MSGP is not required at those facilities at this time.

WHEREAS, without any concession or admission by Defendant that it has violated the Clean Water Act, or any concession or admission by Plaintiff that Defendant's implementation of the measures listed below will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the MSGP, the Parties agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation.

WHEREAS, this Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency ("EPA") for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendants of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

**I.     DEFINED TERMS**

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Decree and are made a part hereof.  Terms used in this Decree that are defined in the Clean Water Act, its implementing regulations, and the MSGP shall have the meanings assigned to them therein, unless otherwise provided in this Decree.  In addition, the following terms used in this Decree have the meaning set forth below:

1. **Effective Date.**  The date upon which this Decree is entered by the Court.

2. **Term of this Decree.**  The period beginning on the Effective Date and ending three (3) years from the Effective Date, unless (a) a payment or other affirmative duty under this Decree is not completed in which case the Decree extends until those obligations are completed, or (b) Defendant requests an extension in accordance with Section III.

3. **Covered Facilities.**  The following RC Facilities:

   - 2260 Saw Mill River Road, Elmsford, NY 10523 ("Elmsford");
   - 51 NY-100, Briarcliff Manor, NY 10510 ("Ossining");
   - 120 Primrose Street, Lincolndale, NY 10540 ("Somers");
   - 924 Broadway, Thornwood, NY 10594 ("Thornwood"); and
   - 475 West Hartsdale Avenue, Hartsdale, NY 10530 ("Greenburgh").

4. **Defendant.**  Royal Coach Lines, LLC.

5. **SWPPP.**  Stormwater Pollution Prevention Plan, as defined in the MSGP.

6. **Operative SWPPP.**  The most recent version of the SWPPP for each Covered Facility.  At the time of signing, the Operative SWPPPs are the SWPPPs attached hereto as Exhibit A–E.

**II.     JURISDICTION AND VENUE**

7. **Jurisdiction.**  Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).  Plaintiff has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.  An actual, justiciable controversy exists between Plaintiff and Defendant.  The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

8. **Venue.**  Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the RC Facilities and in the Saw Mill River, the Pocantico River, the Plum Brook, and the Rum Brook, all of which are tributaries of the Hudson River, navigable waters of the United States, that are located within this judicial district.

9. **Consent.**  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendants.  For purposes of this Decree, Defendant consents to venue in this judicial district.

### III.   COVERAGE UNDER THE MSGP

10. **Compliance with SWPPPs and the MSGP.**  Defendant will implement the Operative SWPPPs at the respective Covered Facility in compliance with the terms of the MSGP, which is hereby incorporated into this Decree, and the Clean Water Act.  A failure to adhere to the Operative SWPPP and/or the MSGP for any Covered Facility is a violation of this Decree.

11. **SWPPP Implementation.**  The SWPPPs attached hereto as Exhibits A–E shall be fully implemented by three (3) months of the Effective Date. Upon fourteen (14) days' notice, Defendants may request an extension of up to three (3) months, which extension shall extend the Term of Decree by a corresponding three (3) months.  Defendant shall provide Plaintiff with an Implementation Report for each Covered Facility, prepared by a qualified stormwater professional, attesting to implementation of the Covered Facility's Operative SWPPP within thirty (30) days of completion.  The Report shall include:
    a. A summary of Best Management Practices ("BMPs") implemented after December 21, 2023;
    b. Photographs of all BMPs added or improved;
    c. A certification that the professional has visited the Facility in the month prior to submission of the Implementation Report;
    d. A certification that, during the professional's last visit, all BMPs described in the Operative SWPPP were in good working order and all housekeeping measures appeared to be taking place.

12. **SWPPP Amendments.**  If, during the Term of this Decree, Defendant amends any SWPPP, or is required to amend any SWPPP for any reason, including but not limited to the reasons enumerated in the MSGP, Defendant shall provide written notice to Plaintiff within thirty (30) days of the amendment and shall provide Plaintiff with supporting documentation that explains Defendant's rationale for such amendment. Defendant shall notify Plaintiff of its intent to remove any BMPs from an Operative SWPPP attached hereto as Exhibit A–E at least thirty (30) days prior to any such removal.  Plaintiff shall have fifteen (15) days from receipt of Defendant's notice to object to Defendant removing any BMP from an Operative SWPPP.  Should Plaintiff object, the Parties shall follow the Dispute Resolution Procedure outlined in Section X.

13. **Schedule of Compliance – Plaintiff's Covenant not to Sue.** The MSGP requires aspiring permittees to prepare and fully implement a SWPPP before they are eligible to seek coverage under the MSGP. In deference to practical considerations, the Consent Decree allows a thirty (30) day period for Defendant to complete all structural modifications at all Covered Facilities. Therefore, this Decree requires Defendant to seek permit coverage before fully implementing its SWPPP for each Covered Facility. Provided that the structural modifications described in each SWPPP are completed on schedule, Plaintiff hereby covenants not to prosecute Defendant's failure to fully implement any SWPPP at any Covered Facility before seeking coverage under the MSGP and covenants not to challenge Defendant's status under the MSGP at any Covered Facility during this initial period until each SWPPP is fully implemented.

14. **Implemented Stormwater Controls.** Defendant shall maintain in good working order all stormwater collection and treatment systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to existing housekeeping measures. If the foregoing requires the participation or cooperation of a third-party, including the owner of the real property where any Covered Facility is located, Defendant shall use best efforts to obtain such participation or cooperation. If such third-party refuses to participate or cooperate as necessary for Defendant to comply with this Paragraph, Defendant shall notify Plaintiff in accordance with Paragraph 36.

IV. **MONITORING PROGRAM**

15. **Additional Monitoring.** In addition to the inspections, monitoring, and reporting required under the MSGP and set forth in the Operative SWPPPs, Defendant agrees to perform the following additional monitoring described in Section IV during the Term of this Decree.

16. **Sampling Points.** The sampling points shall be those described in the Operative SWPPPs.

17. **Sampling Frequency.** The sampling frequency shall occur as set forth in the Operative SWPPPs, however, should Defendant report exceedance(s) of benchmarks and/or numeric effluent limitations at any Covered Facility during the Term of this Decree, Defendant will sample and analyze an additional stormwater discharge for the exceeded parameter(s) in the following (i.e., immediately subsequent) quarter at any such Covered Facility. Defendant will take and analyze additional samples for Chemical Oxygen Demand at Ossining and Greenburgh in Quarter 1 of 2025.

18. **Sampling Methodology.** Defendant will take samples at each sampling point in a manner that is consistent with the requirements and protocols set forth in the MSGP. Defendant may report this sampling as part of the stormwater monitoring required by the MSGP.

19. **Recordkeeping.** Defendant will comply with the reporting and recordkeeping requirements of the MSGP. Defendant shall maintain written documentation at each

5

Covered Facility describing all inspections and assessments required under applicable provisions of the MSGP or of this Decree.

20. **Photographs of Quarterly Inspections.** While conducting routine quarterly inspections of BMPs (required by Part IV.B of the MSGP) and quarterly visual monitoring (required by Part IV.E of the MSGP) for each Covered Facility, Defendant will photograph:
    a. Each BMP;
    b. Any deficiencies in the implementation and/or adequacy of the BMPs;
    c. Each visual monitoring sample in a completely clear and transparent container, with a view from above and from the side of the container; and
    d. Any corrective actions taken in accordance with Part V of the MSGP.

21. **Results sent to Plaintiff.** Defendant will send to Plaintiff a copy of every inspection record made, every sampling result and photograph taken, every BMP maintenance log, and every employee training log produced in accordance with the SWPPP and the MSGP for each Covered Facility during the Term of this Decree once per calendar year, no later than February 1 of the following year or on the last day during which this Decree is in effect, whichever is sooner, unless earlier reporting of an exceedance or violation is required pursuant to Section V.

22. **Provision of Government Documents to Plaintiff.** During the Term of this Decree, Defendant shall provide Plaintiff with copies of any documents, including correspondences, that are exchanged with any government agency, including but not limited to DEC and EPA, that are related to discharges of pollution from the Covered Facilities to waterbodies or sewers of any kind or Clean Water Act compliance.
    a. Routine inspection reports, monitoring data and reports, and certifications for each Covered Facility shall be submitted to Plaintiff on or before February 1 of the following year or on the last day during which this Decree is in effect, whichever is sooner, including but not limited to:
        i. Documents and correspondence related to Defendant's SPDES/NPDES permit coverage at the Facility;
        ii. Annual reports, including the Annual Certification Report required under the MSGP; and
        iii. Monitoring or sampling data.
    b. Records of an exceedance, permit violation, government inspection report, or public or government complaint regarding any Covered Facility shall be submitted to Plaintiff within thirty (30) days, including, but not limited to:
        i. Data related to discharges of industrial wastewater or industrial stormwater to the sanitary sewer system, if any; and
        ii. Reports of spills or other incidents that may result in discharge of pollutants to a waterbody or sewer;
        iii. Documents relating to inspections conducted by any governmental agency that relate to industrial wastewater or industrial stormwater; and
        iv. Any record of a complaint received by the government regarding any RC Facility.

23. **Inspections.** Defendant agrees to grant site access to representatives of Plaintiff, including consultants acting on its behalf, to inspect for compliance with the MSGP and this Decree at each Covered Facility up to one (1) time per quarter (i.e., four (4) times per year), during the Term of this Decree (a "Site Inspection"). The Site Inspection shall occur during normal business hours. Plaintiff shall provide Defendant with as much notice as possible, but at least forty-eight (48) hours' notice prior to a Site Inspection during wet weather, and seventy-two (72) hours' notice prior to a Site Inspection during dry weather, by electronic mail. Upon such notice, Defendant may either (1) send confirmation or (2) propose a reasonable alternate date or time for said entry that is no more than seven (7) days from the originally noticed date. The parties shall confer regarding any scheduling conflicts, as necessary. During a Site Inspection, Defendant shall allow Plaintiff and/or its representatives access to all parts of the Covered Facility necessary to evaluate compliance with its Operative SWPPP, stormwater monitoring records, and nonprivileged reports and data related to stormwater monitoring required by the MSGP and this Decree at the Covered Facility. During a Site Inspection, Plaintiff's representatives may collect samples of stormwater for analysis of parameters listed in the MSGP and SWPPP. Plaintiff may also request that Defendant collect samples of sediment, materials, or other substances for the purpose of identifying the source of an exceedance or non-compliance. Plaintiff shall be permitted to take photographs and/or video recordings of portions of the Covered Facilities pertinent to compliance with the Operative SWPPPs, MSGP, and this Decree during any Site Inspection pursuant to this Paragraph. Materials shall be collected and retained solely for the purpose of evaluating compliance with the Operative SWPPPs, MSGP, and this Decree. If Plaintiff takes photographs and/or video recordings, Plaintiff shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection. Plaintiff shall not provide said photographs and/or video to any third party, except as necessary for enforcement of this Decree. During any inspections covered by this Decree, Plaintiff and its consultants agree to observe all safety rules and restrictions prescribed by Defendant's employees, and Plaintiff acknowledges that certain areas of a Covered Facility may not be accessible during an inspection due to safety reasons. In the event that Plaintiff or is consultants are unable to access a portion of a Covered Facility, the parties will, as soon as reasonably possible, schedule a subsequent site visit during which Plaintiff can complete its inspection.

24. **Additional Inspections.** Should any material noncompliance with the MSGP or the terms of this Decree be noticed by Plaintiff pursuant to Section XI for any Covered Facility, Defendant will provide the opportunity for one (1) additional site visit per month until the Covered Facility is fully compliant with the MSGP and this Decree, and the Parties will follow the procedures outlined for corrective action in Section V. Defendant does not through this process admit that the noncompliance alleged by Plaintiff has occurred, and Defendant retains the right to contest any alleged violations.

V. **EXCEEDANCES AND VIOLATIONS**

25. **Reporting Exceedances of Numeric Effluent Limitations and Benchmark Monitoring Cutoff Concentrations.** Notwithstanding the annual reporting schedule set

7

forth in Section IV, if at any point during the Term of this Decree the analytical results of any sample for any parameter exceeds any applicable *numeric effluent limitation* or *benchmark monitoring cutoff concentration* established in the MSGP, Defendant shall report the event to Plaintiff and provide the analytical results within ten (10) business days of receiving the analytical results.

26. **Corrective Action Plan.** Where an effluent limitation or benchmark monitoring cutoff concentration established in the MSGP is exceeded, where a violation of the Operative SWPPP or the MSGP is identified, or when Plaintiff provides Defendant notice of non-compliance with the terms of this Decree for any Covered Facility, Defendant agrees to take responsive actions to improve stormwater management practices, including re-evaluating structural and non-structural BMPs and considering additional BMPs aimed at curing the violation and/or reducing pollutant levels observed in samples. Within thirty (30) days of discovering such exceedance or non-compliance, Defendant shall provide Plaintiff with a Corrective Action Plan containing the following information:

    a. Identification of any constituent that experienced an exceedance and/or the condition that caused the violation or non-compliance;
    b. Explanation of the possible cause(s) and/or source(s) of the exceedance, violation, or non-compliance; and
    c. Responsive actions to improve stormwater management practices (which may include modified or additional feasible BMPs and/or improved sampling and laboratory analysis procedures, as appropriate) and the proposed dates that such actions will be taken.

Defendant shall complete all responsive actions within twelve (12) weeks of discovery, unless Plaintiff concurs to an extended timeline for completion. *See* Part V.A of the MSGP. Any concurrence or failure to object by Plaintiff shall be deemed consent for purposes of Defendant's compliance with this Decree, but not an admission of the adequacy of such measures, should said measures fail to bring the Covered Facility's stormwater into compliance with applicable water quality criteria or the Clean Water Act's technology-based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically available.

## VI. PAYMENTS

27. **Environmentally Beneficial Project ("EBP")**. Defendant shall pay the sum of two hundred and thirty-five thousand dollars ($235,000) to Groundwork Hudson Valley (the "EBP Recipient") for use on projects relating to the reduction, mitigation, and/or remediation of the effects of stormwater pollution or environmental restoration of, or other benefit to, the Hudson River watershed. Defendant shall transfer the payment to the EBP Recipient within five (5) business days of the Effective Date by check or electronic transfer. A check shall be sent via certified mail, or similar service with tracking. Defendant shall concurrently notify Plaintiff that payment has been sent to the EBP Recipient and provide the tracking number. None of this payment shall be disbursed to Plaintiff.

28. **Stipulated Additional EBP**.  Should Defendant fail to provide information or any required documentation to DEC or Plaintiff by the deadlines required by the MSGP or this Decree, Defendant shall make an additional payment of one-hundred dollars ($100) for each day of such failure, which shall accrue from the date of the missed deadline. Payments shall be made to the EBP Recipient in the manner specified above.  Payment of each additional amount shall be aggregated and paid in a single, lump sum by June 30 of each year for the prior year. Defendant shall concurrently notify Plaintiff each time a payment is made and provide a copy of each check and the tracking number.  None of these payments shall be disbursed to Plaintiff.

29. **Fees, Costs, and Expenses.**  Defendant shall pay a sum of one hundred sixty-six thousand two hundred fifty dollars ($166,250) as full and complete satisfaction of Plaintiff's claims for attorneys' fees and costs incurred to date, including investigative and expert costs.  Defendant shall transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer.  A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA".  Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff.

30. **Compliance Oversight Fees and Costs.**  Plaintiff will incur costs in order to monitor Defendant's compliance with this Decree, including but not limited to costs incurred by Plaintiff or their counsel or consultants to conduct site inspections, collect or review water quality sampling data, review annual reports, and discuss with representatives of Defendant any potential changes to compliance requirements, preparation and participation in mediation, and similar activities. To help defray these costs, Defendant agrees to pay Plaintiff's fees and costs in an amount not to exceed forty thousand dollars ($40,000) through the Term of this Decree.  Defendant shall transfer the payment to Super Law Group within five (5) business days of the Effective Date by check or electronic transfer.  A check shall be sent via certified mail, or similar service with tracking and shall be payable to "Super Law Group, LLC Attorney Trust - IOLA". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Plaintiff.  Any funds not used during the Term of this Decree shall be donated to the EBP Recipient identified in Paragraph 27.

## VII. EFFECT OF DECREE

31. **Plaintiff's Release of Liability.**  Upon Court approval and entry of this Consent Decree, Plaintiff covenants not to sue and releases Defendant (including its representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability under CWA Section 505, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (a) relating to or resulting from allegations and claims set forth in the Notice Letter, and (b) for any past violations at the RC Facilities of the Clean Water Act's stormwater provisions alleged, or that could have been alleged, in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

32. **Reservation.** Plaintiff does not waive its right to bring a future action based on stormwater discharges that occur after the Term of this Decree.

33. **Change(s) to Covered Facilities**. Defendant may notify Plaintiff of any additional school bus facility owned or operated by Defendant in the Hudson River watershed during the Term of this Decree. Should Plaintiff have any concern regarding compliance with the Clean Water Act at any such facility, such concern shall be, in the first instance, subject to sixty-day informal negotiations between the Parties, prior to the provision of any Notice of Intent to Sue. If Plaintiff does not provide a Notice of Intent to Sue, the Parties may move to amend this Decree to add such facility to the definition of Covered Facilities. Defendant may notify Plaintiff that a Covered Facility is no longer operated by Defendant and provide Plaintiff with supporting evidence. Following Defendant's provision of notice and supporting evidence, the parties may move to amend this Decree to remove such facility from the definition of Covered Facilities.

34. **Defendant's Releases of Liability.** Defendant releases and discharges Plaintiff and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of any nature which concern or are connected with this action.

35. **Compliance with Law.** Plaintiff does not by consent to this Decree warrant or aver in any manner that Defendant's compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

36. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the other in writing within five (5) business days of the date that the failure becomes apparent and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. If the Parties cannot timely agree upon the terms of such a stipulation, the Parties shall follow the Dispute Resolution Procedure outlined in Section X.

VIII. **FEDERAL REVIEW OF DECREE**

37. **Review by United States.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the Attorney General of the United States and the Administrator of the EPA. Therefore, upon signing of this Decree by the Parties, Plaintiff shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R.

§ 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

38. **Entry of Order.** Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall move the Court for entry of this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the Court.

IX. **MODIFICATION AND ENFORCEMENT OF DECREE**

39. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and the approval of the Court.

40. **Continuing Jurisdiction of the Court.** This Court shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

X. **DISPUTE RESOLUTION PROCEDURE**

41. **Meet and Confer.** Any disputes or alleged violations with respect to any of the provisions of this Consent Decree shall be, in the first instance, the subject of informal negotiations for a minimum of a thirty (30) day period between the Parties affected by the dispute to attempt to resolve such dispute.

42. **Motion.** If a dispute between the Parties cannot be resolved by informal negotiations, a Party may file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The other Party shall have thirty (30) days to respond to the motion and propose an alternate resolution.

43. **Notice.** The moving Party shall provide the other Party with seventy-two (72) hours written notice prior to initiating court proceedings to enforce this Decree.

44. **Fee Awards.** In resolving any dispute arising from this Agreement, the Court shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Court.

45. **Remedies.** The Parties acknowledge and agree that specific performance, declaratory relief, and injunctive relief are the only appropriate remedies for any breach of this Agreement, and under no circumstances shall monetary damages be allowed for any breach of this Agreement. EBPs, awards of fees and costs, and/or penalties payable to the U.S. Treasury are not damages.

XI. **MISCELLANEOUS PROVISIONS**

46. **Entire Agreement.**  This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

47. **Notices.**  Any notice, demand, copies of documents, or other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing.  Notices shall be directed to the Parties at their respective addresses set forth below.  Notices given in the foregoing manner shall be deemed given: (a) if delivered by courier, when actually received or refused by the addressee; (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs; or (c) if e-mailed, when acknowledged by the addressee.  Each Party shall promptly notify the other Party of any change in this contact information, including but not limited to a change in representation.

| Notices for Plaintiff shall be sent to: | Notice for Defendant shall be sent to: |
|---|---|
| Andie Altchiler<br>andie@superlawgroup.com<br>and<br>Julia Muench<br>julia@superlawgroup.com<br><br>Super Law Group, LLC<br>222 Broadway, 22nd Floor<br>New York, NY 10038<br><br>Notices sent to the individuals listed above at the address listed above shall be deemed as notice to Plaintiff. | Xavier Lawrence<br>xlawrence@andersonkreiger.com<br>and<br>Colin Van Dyke<br>cvandyke@andersonkreiger.com<br><br>Anderson & Kreiger LLP<br>50 Milk Street, 21st Floor<br>Boston, MA 02109<br><br>Notices sent to the individuals listed above at the addresses listed above shall be deemed as notice to Defendant. |

48. **Authorization.**  Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

49. **Successors and Assigns.**  This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

50. **Interpretation.**  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the

contrary are hereby specifically waived.  The terms of this Decree were negotiated at arm's length by the Parties hereto.

51. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

52. **Counterparts.**  This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original.  Any one of such completely executed counterparts shall be sufficient proof of this Decree.  Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree.  Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

53. **Severability.**  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected, except as to Section IX (providing for the continuing jurisdiction of this Court), which is an essential term and—if not in force—this agreement shall be null and void.

54. **Changes to the MSGP.** Defendant will comply fully with the MSGP and any permit modification, individual permit, or MSGP reissuance applicable to the Facility during the Term of this Decree. If any action required by this Decree conflicts with a change to the MSGP, the MSGP will control.

55. **Publicity**. Any public statement made by Defendant in any press release, in any written material promoting Defendants' environmental or charitable practices or record, or in Defendants' Annual Reports that refers to Defendant's payments under this Decree shall include the following language: "Payments to this organization were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Riverkeeper, Inc."

56. **Findings.**  The Parties attest and the Court, by entering this Consent Decree, finds that this agreement has been negotiated by the Parties in good faith; that settlement of this matter is in the public interest and in accordance with the Clean Water Act; and entry of this Consent Decree is fair and reasonable.

## XII.  EXHIBITS

57. The following Exhibits are attached to this Decree and made a part hereof:

    a. Exhibit A: Stormwater Pollution Prevention Plan for Elmsford
    b. Exhibit B: Stormwater Pollution Prevention Plan for Ossining
    c. Exhibit C: Stormwater Pollution Prevention Plan for Somers
    d. Exhibit D: Stormwater Pollution Prevention Plan for Thornwood
    e. Exhibit E: Stormwater Pollution Prevention Plan for Greenburgh
    f. Exhibit F: Schedule for Compliance Obligations

Dated: 1/16/2025 _____    Royal Coach Lines, LLC

By: *David A. Duke* (Signed by: FF8C83EF1FC94E4...)
David A. Duke
Title: Chief Development Officer

Dated: _____    Riverkeeper, Inc.

_____
By:
Title:

ENTERED and DATED this ___ day of _____, 2025

_____
Honorable Philip M. Halpern
United States District Judge

14

Dated: _____    Royal Coach Lines, LLC

_____
By:
Title:

Dated: 01/14/2025    Riverkeeper, Inc.

*Casey Hellman*

By: Casey Hellman
Title: Legal Fellow

ENTERED and DATED this 17 day of March, 2025

_____
Honorable Philip M. Halpern
United States District Judge

14